# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLES VINCENT SHORTS,<br><br>      Plaintiff,<br>vs.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>      Defendant. | CASE NO. 15cv1965-BEN (KSC)<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT and DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT |

  An applicant may seek judicial review of a final agency decision pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).  Plaintiff Charles Vincent Shorts filed this action seeking judicial review of the Social Security Commissioner's denial of his application for disability insurance benefits.  The Honorable Magistrate Judge Karen S. Crawford issued a thoughtful and thorough Report and Recommendation recommending the decision be affirmed.  Plaintiff filed timely objections.  Where a timely objection to a report and recommendation has been filed, the district court reviews *de novo* the report or recommendations to which an objection was filed.  28 U.S.C. § 636(b)(1).  Having conducted a *de novo* review, the Court declines to adopt the Report and Recommendation, grants Plaintiff's motion for summary judgment, and denies Defendant's cross motion for summary judgment.

# BACKGROUND

The procedural history and a summary of the administrative record ("AR") is carefully and methodically laid out in the thorough Report and Recommendation. Plaintiff applied for disability and supplemental security benefits claiming he was unable to work as of January 30, 2012. He was diagnosed with a malignant, inoperable, lethal brain stem tumor (or "glioma") in 2010. He suffers from recurring headaches and dizziness. The Administrative Law Judge ("ALJ") recognized as much: "*The claimant has the following severe impairment: inoperable brain stem glioma (malignant neoplasm of the brain stem) with chronic headaches. . . .*" (AR 24) (emphasis added). Indeed, Dr. Thomas Schweller, M.D., the board-certified consulting neurologist hired by the Commissioner to assess Mr. Shorts, agreed. Dr. Schweller opined,

> He has chronic headache pain that periodically requires emergency room treatment. There is no obvious evidence of papilledema or increased intracranial pressure, but it is certainly likely that there are some issues with circulation due to brainstem glioma. This is a lethal condition that will progress within a short period of time. It is uncertain what the length of time this progression might be. At the present time, he is not significantly symptomatic on his physical examination. (AR 234).

Nevertheless, the ALJ concluded that Plaintiff was not disabled. The Appeals Council denied review of the ALJ's decision, and the ALJ's decision became final. So, why did the ALJ find the Plaintiff not disabled? Because he found Plaintiff's pain testimony "not entirely credible." Plaintiff would be found disabled *if* his headache pain testimony is credited, because the vocational expert testified there would be no jobs Plaintiff could do. (AR 44). Instead, the ALJ concluded:

> The claimant has alleged disability due to chronic headaches due to brain stem glioma. After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, *the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible* for the reasons explained in this decision. (Emphasis added).

Plaintiff asserts that the ALJ failed to articulate clear and convincing reasons for rejecting Charles Shorts' pain testimony.

**DISCUSSION**

In a recent decision, the Ninth Circuit evaluated a rejection of a claimant's pain testimony where an ALJ used similar phraseology. In *Brown-Hunter v. Colvin*, 806 F.3d 487, 491 (9th Cir. 2015), the ALJ wrote that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible. . . ." (emphasis added) (reversing finding of non-disability).[1] The Court of Appeals articulated the standard for review. Before a claimant's testimony can be rejected, where (as here) there is objective medical evidence of an underlying impairment and there is no evidence of malingering,[2] the ALJ must provide specific, clear, and convincing reasons. *Id.* at 488–89 ("When an Administrative Law Judge (ALJ) determines that a claimant for Social Security benefits is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so."). This standard applies to Plaintiff's appeal.

In denying benefits, the ALJ here provided five reasons for disbelieving the Plaintiff's pain testimony, but the reasons are not convincing. As another physician

---

1 This phraseology for discounting pain testimony as incredible has been used before. *See, e.g., Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (emphasis added) ("the claimant's *statements concerning the intensity, persistence and limiting effects of these symptoms* [migraine headaches] *are not credible . . . .*") (reversing finding of non-disability).

2 Despite the numerous emergency room visits documented in the administrative record, not one of the physicians has suggested that Mr. Shorts might be malingering or that his complaints of headache pain were false or exaggerated.

- 3 -

opined about brain stem gliomas,

> It's really difficult to have a brain stem glioma and not to have symptoms. The brain stem is a really small, little area about yea big, and in that are all of the functions that keep us alive. It keeps our heart beating, our blood flowing. Our respiratory center is there. That's not higher levels of functioning. That's not where you think. That's not where you're smart. That's where you live. And it's real difficult to have a brain stem glioma for very long that does not begin causing very, very significant problems.

*Peeks v. Apfel*, Case No. 99-cv-1083, 2000 WL 1458812 *6 (S.D. Ohio Sept. 22, 2000).

**<u>First Reason:  Objective Medical Evidence of Headaches</u>**

The first reason of the decision is not convincing. The ALJ found that the "weight of the objective evidence does not support the claims of claimant's disabling limitations to the degree alleged." (AR 25-26). In support, he explained that consulting neurologist Dr. Schweller's examination found that Plaintiff was "not *significantly* symptomatic" and had mostly normal physical and mental health. He explained that findings of mostly normal physical and mental health were consistent with the results of other examinations conducted by his treating oncologists, Dr. Kesari and Dr. Piccioni, and by the physicians who examined Plaintiff in emergency rooms. (R&R at 24).

There are records from twenty emergency room visits. Physicians reported that Plaintiff would arrive with intense headache pain that was beyond what could be controlled at home. For example, Clayton B. Whiting, M.D., notes on a December 11, 2013 emergency room visit,

> A 26-year-old gentleman, well known to the Scripps system. This patient unfortunately suffers from chronic headache. He has a known brainstem glioma. He has had radiation in the past. I last cared for this patient on my own, back in November 2012, which is over a year ago. The patient states that he has headaches five days a week. Unfortunately there are some days that are worse and he has to come to the emergency department for treatment. (AR 259).

Similarly, one year earlier, on a December 3, 2012 emergency room visit, Marcus Wang, M.S., noted,

- 4 -

> This is a 25-year-old male with a history of glioblastoma of the brain stem status post radiation therapy. . . . He says occasionally he does get headaches. He gets it almost daily, but sometimes worse than others and today he has a headache again, it is generalized and it is worse with movement, worse with coughing and laughing and the pain is about 7/10 to 8/10, and because of the headache, he decided to come to the emergency room for evaluation and treatment. (AR 288).

The emergency room treating physicians determined that Plaintiff's headaches were likely caused by his brainstem glioma and did not doubt that Plaintiff's headaches were chronic or severe. Plaintiff points out that the medical findings of his treating oncologists at UCSD, Dr. Kesari and Dr. Piccioni, do not negate Mr. Shorts' testimony regarding his disabling headaches. (Objections at 4). With respect to Dr. Kesari, during his January 2013 exam, Plaintiff denied exhibiting chest pain, shortness of breath, abdominal pain, memory loss, neck pain, rashes, or weight loss. (AR 240). Headaches were his only symptoms at the time. Dr. Kesari performed a thorough examination, which revealed normal physical and neurological results except for some abnormal eye movement and a mild issue with muscle coordination in his left arm. (AR 241-242). In May 2013, Plaintiff reported dizziness and headaches but denied other symptoms. (AR 243). An MRI of Plaintiff's brain showed a "slight interval decrease in the size of the expansile mass" and "no abnormal enhancement." (AR 244, 247).

Dr. Piccioni evaluated Plaintiff in October 2014. Plaintiff reported headaches, nausea, vomiting, and difficulty falling asleep due to the headaches. (AR 343). Dr. Piccioni recommended that Plaintiff take Midrin for his headaches and Phenergan for his nausea. (AR 345). He noted that Plaintiff had a "stable MRI" from 18 months ago that showed a "mild decrease in size," but he ordered a new MRI. (*Id.*)

That other physical conditions were found to be mostly normal hardly undercuts the findings of chronic headache pain, as headache pain is the primary symptom caused by brain stem gliomas. Consequently, to say that other physical conditions are normal does not diminish the existence or severity of Plaintiff's

- 5 -

headache pain.  On the contrary, that a person is driven by headache pain to seek emergency department treatment on some twenty different occasions suggests that the weight of the objective evidence *does support* the claims of disabling limitations to the degree alleged.  *See Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) ("In evaluating the credibility of pain testimony after a claimant produces objective medical evidence of an underlying impairment, an ALJ may not reject a claimant's subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain.").  In this case, the ALJ made the same mistake as that described in *Brown-Hunter*.  806 F.3d at 490-91.  In both cases the ALJ found a lack of credibility but made the mistake of summarizing the medical record without tying a particular statement found to be not credible to particular medical evidence.  *Id.* at 493 ("The ALJ here made the identical conclusory statement and likewise failed to identify specifically which of Brown-Hunter's statements she found not credible and why.").  That is insufficient.  *Id.*

**Second Reason:  Conservative Course of Treatment**

The ALJ also discredited Plaintiff's testimony because he had "not generally received the type of medical treatment one would expect for a totally disabled individual.  [His] course of treatment since his alleged disability onset date has generally reflected a conservative course of treatment."  (AR 26).  The ALJ does not, however, point to any evidence to say that more aggressive treatment was recommended.  Indeed, the glioma is inoperable.  One physician remarked that Plaintiff is receiving palliative care at this point because the glioma is inoperable.  (AR 274) (Emergency Department notes of Valerie Norton, M.D., dated June 7, 2013) ("He does not wish to be admitted.  He just wants symptomatic control, and since he is a palliative care patient, I feel this is appropriate.").  Consequently, the ALJ's observation that the course of treatment has generally reflected a conservative approach does not "clearly and convincingly" support the ALJ's rejection of Plaintiff's pain testimony.

**Third Reason: Physical Limitations and Special Accommodations**

The ALJ's third reason given for rejecting Plaintiff's testimony is that, according to the ALJ, the record did not show that he required any special accommodations to relieve his pain or symptoms. (AR 26). The ALJ then recites the medical evidence about atrophy, loss of strength, and difficulty moving that are indicative of severe and disabling pain. For example, the ALJ says, "[i]t is noteworthy that while he has alleged loss of balance, he has a normal gait and does not require any assistive devices to ambulate." *Id.*

Plaintiff objects because "this is not a case where a disability applicant suffers a near continuous degree of symptoms." (Objections at 5). The ALJ's reason is not convincing. In essence, the reason can be restated as: when not experiencing severe headaches, Plaintiff can walk fine without muscle atrophy. In other words, a finding that Plaintiff is fine when not suffering headaches is not a clear and convincing reason to find that his credibility is lacking when describing glioma-induced headaches that Plaintiff is experiencing. This is not an inconsistency. Moreover, it is not entirely accurate. Plaintiff's many visits to emergency rooms demonstrate that, in spite of home care, medical expertise and emergent treatment is sometimes the only "accommodation" that can relieve his disabling pain.

**Fourth Reason: Effectiveness of Medications**

The ALJ's fourth reason given for rejecting Plaintiff's claims about the intensity of his symptoms is that "the medications have been relatively effective in controlling the claimant's symptoms." (AR 26). Obviously, over twenty visits to hospital emergency rooms suggests the opposite is true – that the medications were not particularly effective in controlling Plaintiff's headache pain. The ALJ does not address this. The only explanation offered is one example of improvement with Decadron in March 2011. Perhaps that medication helped in 2011. But by May 2013, Decadron was not working. Treating oncologist David E. Piccioni, M.D., noted: "dizziness x 2 wks, headaches still and has been going to ER regularly for

- 7 -


pain meds. Headaches are bifrontal, sharp and lying down makes them worse. No seizures. *Decadron did not help back in Jan.*" (AR 342-43) (emphasis added). In August of 2013, Plaintiff presented to the emergency room for headache pain. Mark C. Cannus, M.D. reports, "he says, he has been taking Percocet at home which is not helping enough." (AR 269). Dr. Cannus treated Plaintiff with Zofran, Dilaudid, and Benadryl intravenously, observing "[t]his is the 3 combo medications that he receives IV when he has this type of symptom that he says helps immensely." (AR 270). By November 2014, Dr. Piccioni was prescribing Midrin for headaches and Phenergan for nausea. (AR 344). In view of the record, this fourth reason for discounting Plaintiff's pain testimony is not supported by the record and is not convincing. A reviewing court is "constrained to review the reasons the ALJ asserts." *Brown-Hunter*, 806 F.3d at 492 (quoting *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)).

**Fifth Reason:  Lack of Medical Opinion Testimony**

The ALJ's final reason given for rejecting Plaintiff's testimony is that the "none of the claimant's physicians have opined that he is totally and permanently disabled from any kind of work." (AR 26). This reason is not convincing because Plaintiff's treating physicians have simply not offered an opinion about whether his condition is disabling. The only physician which has offered an opinion is the Commissioner's consulting physician, Dr. Schweller. The only conclusion Dr. Schweller reaches about Plaintiff's chronic headache pain is that, "[a]t the present time, his is not significantly symptomatic." (AR 234).

The record is replete with other times, however, where plaintiff was significantly symptomatic. (Jan. 10, 2012) (AR 303-05); (Mar. 14, 2012) (AR 300-02); (July 19, 2012) (AR 298-99); (Oct. 20, 2012) (AR 294-97); (Nov. 8, 2012) (AR 291-92); (Dec. 3, 2012) (AR 288-90); (Dec. 11, 2012) (AR 286-87); (Dec. 16, 2012) (AR 283-85); (Dec. 25, 2012) (AR 281-83); (Jan. 26, 2013) (AR 279-80); (Apr. 24, 2013) (AR 275-78); (June 7, 2013) (AR 273-74); (July 20, 2013) (AR 271-72);

(Aug. 26, 2013) (AR 269-70); (Sept. 9, 2013) (AR 265-67); (Oct. 8, 2013) (AR 261-64); (Dec. 11, 2013) (AR 259-60); and (Feb. 1, 2014) (AR 316-25). One may be disabled from a severe impairment while symptoms wax and wane. *Taylor v. Commissioner*, 659 F.3d 1228, 1234 (9th Cir. 2011) (quoting *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (error to find ability to work where attacks of muscle weakness come and go because "one does not need to be utterly incapacitated in order to be disabled."). In fact, *it is error* to reject a claimant's testimony merely because symptoms wax and wane. *Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("[I]t is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.").

To sum up, Dr. Schweller's opinion was based on an examination when Plaintiff's symptoms were not significant. There were numerous other days when physicians treated Plaintiff for symptoms that were significant using significant intravenous medications. Neither these treating physicians, nor the Commissioner's consulting physician, suggest that Plaintiff's recurring headache pain is fabricated or exaggerated. That makes sense. One would expect headaches with a glioma. *See Casteel v. Astrue*, No. 12cv136-S, 2012 WL 5398537 *n.5 (W.D. Ky. Sept. 21, 2012) ("The term 'glioma' includes a broad range of brain and spinal cord tumors that originate in the glial cells of the brain. . . . The symptoms of a glioma depend on the area of the brain affected, with the most common symptom being a headache. Approximately half of all individuals diagnosed with a brain tumor will exhibit headaches with other possible symptoms to include seizure, memory loss, physical weakness, loss of muscle control, visual or language symptoms, cognitive decline and personality changes. See http:// www.webmed.com / cancer / brain-cancer / malignant-gliomas (last visited Sept. 12, 2012)."). Therefore, the fact that "none of the claimant's physicians have opined that he is totally and permanently disabled" is not a convincing reason to discredit Plaintiff's credibility concerning his headache pain limitations.

The ALJ has not provided legally sufficient, convincing reasons for rejecting Charles Shorts' pain testimony. *Brown-Hunter*, 806 F.3d at 493. That is not to say that the ALJ's decision was careless. His decision demonstrates a thorough understanding of the medical record, a reasoned consideration of the case and a fair judgment on a difficult question. The above reasons convinced the ALJ to discount the claimant's complaints of pain. The reasons given are not far-fetched, absurd, or capricious. Nevertheless, the reasons must be also convincing to this Court in order to withstand review. As explained above, they are not convincing to this Court.

**Alternate grounds**

The ALJ rejected Plaintiff's pain testimony at step five of the well-known disability evaluation process without substantial evidence in the record to support the decision. But there is also not substantial evidence supporting the ALJ's conclusion at step four. At step four, the ALJ determined that Plaintiff's malignant brain stem glioma did not meet or equal any of the "listings." The ALJ was required to evaluate Petitioner's tumor under the listing criteria in Appendix 1, section 13.13. 20 C.F.R. Pt. 404, Subpt. P., App. 1. *See e.g., Wiggins v. Astrue*, No. CV07-491-S-CWD, 2009 WL 205230 *5 (D. Idaho Jan. 28, 2009) (evaluating brain tumor impairment under then-existing listings).

The listings are medical conditions that the Social Security Administration accepts as disabling without any additional evidence of symptoms or functional deficits. Relevant to this disability claim, 20 C.F.R. § 404, Subpt. P, App. 1., instructs on primary central nervous system (CNS) tumors. "We use the criteria in 13.13 to evaluate cancers that originate within the CNS (that is, brain and spinal cord cancers). The CNS cancers listed in 13.13A1 are highly malignant and respond poorly to treatment, and therefore we do not require additional criteria to evaluate them." *Id.* at listing 13.00K6a. The listing for a brain stem glioma is covered by listing 13.13A and it includes cancers described in 1, 2, or 3:

    1. Glioblastoma multiforme, ependymoblastoma, and *diffuse intrinsic brain stem gliomas* (see 13.00K6a).

      2. Any Grade III or Grade IV CNS cancer (see 13.00K6b), including astrocytomas, sarcomas, and medulloblastoma and other primitive neuroectodermal tumors (PNETs).
      3. Any primary CNS cancer, as described in a or b:
         a. Metastatic.
         b. Progressive or recurrent following initial anticancer therapy.

Title 20 C.F.R. § Pt. 404, Subpt. P, App. 1 (emphasis added); *see also Watson v. Colvin*, No. EDCV 13-1091-OP, 2014 WL 585293 *4 (C.D. Cal. Feb. 13, 2014). While nowhere in the administrative record is Plaintiff's glioma categorized as a Grade III or IV,³ it is described as a malignant glioma. The grading of a glioma has been described this way: "A glioma is defined as 'a tumor composed of tissue which represents neuroglia (*i.e.,* the supporting structure of nervous tissue) in any one of its stages of development.' [A] 'low-grade glioma is a 1 or a 2, meaning benign.' A 'high-grade glioma, a 3 or a 4 . . . would be a malignancy.'" *Peeks ex rel. Decanter v. Apfel*, No. 99cv1083, 2000 WL 1458812, at *5 (S.D. Ohio Sept. 22, 2000) (citations omitted).

    In other words, Mr. Shorts' malignant glioma may be a Grade III or IV. If so, he would automatically be considered disabled without regard to any other symptoms or impairments. *See* Social Security Program Operations Manual System (POMS) DI 23022.735 Glioma - Grade III and IV ("Grade III and IV gliomas meet listings 13.13A1 and 113.13 upon confirmed diagnosis, regardless of effectiveness of treatment.").

    The ALJ noted correctly that no physician stated that Plaintiff's impairment meets any listing. (AR 25). But the ALJ incorrectly noted that "the state agency program physicians opined that it does not." *Id.* The decision does not indicate where the notation finds support in the record and this Court's review of the record finds none. Whether Plaintiff meets listing 13.13A(1), (2), or (3) is simply not

---

    3 Listing 13.00K6b explains, "[w]e consider a CNS tumor to be malignant if it is classified as Grade II, Grade III, or Grade IV under the World Health Organization (WHO) classification of tumors of the CNS."

addressed by physicians or the ALJ and it appears likely that Plaintiff does meet the listing.

**Remedy**

In light of the reversible error, the question is one of remedy. Plaintiff correctly argues that in instances such as this, the credit-as-true test applies. *Garrison v. Colvin*, 759 F.3d 995, 1019-21 (9th Cir. 2014). Under that test, a court credits the claimant's pain testimony and the associated limitations and remands for calculation and award of benefits. *Id.* at 1020 (remand for award appropriate where: (1) the record is fully developed and further administrative proceedings would serve no useful purpose; (2) the reasons for rejecting the claimant's testimony are not sufficient; and (3) if the discredited testimony were credited as true, the ALJ would be required to find the claimant disabled).

Here, all three parts of the test are met and the administrative record as a whole convinces the Court that Plaintiff is, in fact, disabled. Remanding for an award of benefits will have the salutary effect of "ensuring that deserving claimants will receive benefits as soon as possible." *Id.* at 1019 (test recognizes that "applicants for disability benefits often suffer from painful and debilitating conditions, as well as severe economic hardship [for which] delaying the payment of benefits by requiring multiple administrative proceedings that are duplicative and unnecessary only serves to cause the applicant further damage – financial, medical, and emotional.").

**CONCLUSION**

For the reasons discussed above, having reviewed the decision *de novo*, the Report and Recommendation is declined. Plaintiff's motion for summary judgment is granted. Defendant's cross-motion for summary judgment is denied.

**IT IS THEREFORE ORDERED** that the final decision of the Commissioner of Social Security is reversed and the case is remanded for the

1 calculation and award of benefits.

DATED: February 6, 2017

_____
Hon. Roger T. Benitez
United States District Judge